**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VEHICLE OPERATION TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 13-539-SLR |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| VEHICLE OPERATION TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 13-540-SLR |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| GENERAL MOTORS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| VEHICLE OPERATION TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 13-542-SLR |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| PORSCHE CARS NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'**
**<u>MOTION TO DISMISS FOR VIOLATION OF RULE 11</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

I.      INTRODUCTION ................................................................................... 1

II.     NATURE AND STAGE OF PROCEEDINGS ........................................ 1

III.    SUMMARY OF ARGUMENT ............................................................... 2

IV.     LEGAL STANDARDS ............................................................................ 2

        A.      Dismissal Under Rule 11 is Appropriate for Baseless and/or Frivolous
                Pleadings, Especially in the Third Circuit, Applying a Test of
                "Objective Reasonableness" ...................................................... 2

        B.      Patent Scope Disclaimed Cannot Later Be Reclaimed ................... 4

V.      STATEMENT OF FACTS ...................................................................... 5

        A.      The Inventor Limited the Alleged Invention to "Dedicated Displays" ............. 5

        B.      The Accused Vehicles All Use Multi-Function Displays ................... 7

                (i)     Porsche's Accused Vehicles ........................................ 7

                (ii)    GM's Accused Vehicles ............................................... 9

                (iii)   Ford's Accused Vehicles ............................................ 12

        C.      VOT Has Refused to Withdraw Its Patent Infringement Claims .................. 14

VI.     ARGUMENT ......................................................................................... 15

        A.      The Inventor Disclaimed Multi-Function Displays During Prosecution ........ 15

        B.      By Application of the Objective Reasonableness Test, VOT Failed to
                Conduct an Adequate Pre-Suit Investigation, Which Violates Rule 11 ......... 17

        C.      Dismissal With Prejudice is Appropriate Under Rule 11 ................. 19

VII.    CONCLUSION ..................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Andersen Corp. v. Fiber Composites,*
  *LLC*, 474 F.3d 1361 (Fed. Cir. 2007) ........................................................................ 5

*Antonious v. Spalding & Evenflo Cos.*,
  275 F.3d 1066 (Fed. Cir. 2002) .......................................................................... 3, 17

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
  713 F.3d 1090 (Fed. Cir. 2013) ............................................................................... 4

*Brown v. Dist. Unemployment Compensation Bd.*,
  411 F. Supp. 1001 (D.D.C. 1975) ........................................................................... 4

*Chi. Dist. Council of Carpenters Pension Fund v. Balmoral Racing Club*,
  No. 00 C 2375, 2000 WL 876921 (N.D. Ill. June 26, 2000) .................................. 14

*Computer Docking Station v. Dell, Inc.*,
  519 F.3d 1366 (Fed. Cir. 2008) ............................................................................... 5

*Dodson v. Runyon*,
  86 F.3d 37 (2d Cir. 1996) ........................................................................................ 4

*Doering v. Union County Bd. of Chosen Freeholders*,
  857 F.2d 191 (3d Cir. 1988) ............................................................................. 3, 20

*Eltech Sys. Corp. v. PPG Indus., Inc.*,
  903 F.2d 805 (Fed. Cir. 1990) ............................................................................... 20

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011) ............................................................................. 17

*Henry v. Gill Indus., Inc.*,
  983 F.2d 943 (9th Cir. 1993) ................................................................................... 4

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
  222 F.3d 951 (Fed. Cir. 2000) ................................................................................. 4

*Insituform Techs., Inc., v. Cat Contracting, Inc.*,
  99 F.3d 1098 (Fed. Cir. 1996) ................................................................................. 5

*Judin v. United States*,
  110 F.3d 780 (Fed. Cir. 1997) ................................................................................. 2

*Lease v. Fishel*,
  712 F. Supp. 2d 359 (M.D. Pa. 2010) ............................................................... 3, 20

*Lieb v. Topstone Indus., Inc.*,
  788 F.2d 151 (3d Cir. 1986) .................................................................................. 3

*Lony v. E.I. Du Pont de Nemours & Co.*,
  935 F.2d 604 (3d Cir. 1991) .................................................................................. 3

*Marina Mgmt. Servs., Inc. v. Vessel My Girls*,
  202 F.3d 315 (D.C. Cir. 2000) .......................................................................... 4, 20

*Norian Corp. v. Stryker Corp.*,
  432 F.3d 1356 (Fed. Cir. 2005) ............................................................................. 5

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) .......................................................................... 5, 6

*Phonometrics, Inc. v. Economy Inns of Am.*,
  349 F.3d 1356 (Fed. Cir. 2003) ........................................................................... 20

*Purdue Pharma LP. v. Endo Pharms. Inc.*,
  438 F.3d 1123 (Fed. Cir. 2006) ............................................................................. 5

*Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*,
  517 F.3d 1364 (Fed. Cir. 2008) ............................................................................. 5

*Rhinehart v. Stauffer*,
  638 F.2d 1169 (9th Cir. 1979) .............................................................................. 4

*Schindler Elevator Corp. v. Otis Elevator Co.*,
  593 F.3d 1275 (Fed. Cir. 2010) ............................................................................. 4

*Seachange Int'l, Inc. v. C-COR, Inc.*,
  413 F.3d 1361 (Fed. Cir. 2005) ............................................................................. 5

*Southwall Techs., Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995) .............................................................................. 5

*Spectrum Int'l v. Sterilite Corp.*,
  164 F.3d 1372 (Fed. Cir. 1988) ........................................................................... 16

*Tech. Innovations, LLC v. Amazon.com, Inc.*,
  No. 11-cv-690-SLR, D.I. 110 (Order) (D. Del. August, 15, 2013) ......................... 20

*uShip Intellectual Props., LLC v. United States*,
  714 F.3d 1311 (Fed. Cir. 2013) ............................................................................. 5

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009) ................................................................................................. 5

## I.  INTRODUCTION

This motion to dismiss is being filed at the Court's request to determine whether Plaintiff Vehicle Operation Technologies, LLC ("VOT") has a basis in fact or in law to support its allegations of patent infringement against Defendants[1] in light of statements the inventor made during prosecution of the patent at issue.  Ex. A, Aug. 6, 2013 Scheduling Hr'g, Tr. 15:18-16:14) ("So I have come to believe that Rule 11 is the appropriate process…. I will invite you to submit it [a Rule 11 motion]").  Thus, pursuant to Rule 11 of the Federal Rules of Civil Procedure, Defendants hereby move to dismiss VOT's complaint with prejudice.

## II.  NATURE AND STAGE OF PROCEEDINGS

On April 5, 2013, VOT brought six separate actions against American Honda Motor Co., Inc. ("Honda"); BMW of North America, LLC ("BMW"); Ford Motor Company ("Ford"); General Motors LLC ("GM"); Nissan North America, Inc. ("Nissan"); and Porsche Cars North America, Inc. ("Porsche") alleging infringement of the U.S. Patent No. 7,145,442 ("the '442 Patent").  On April 23, 2103, VOT filed another action alleging infringement of the '442 Patent by Mitsubishi Motors North America, Inc. ("Mitsubishi").  Porsche and Mitsubishi counterclaimed seeking declaratory judgments of noninfringement and invalidity.  A Rule 16(b)

---

[1]Joining in the motion to dismiss are Porsche Cars North America, Inc.; General Motors LLC; and Ford Motor Company (collectively, "Defendants").  BMW of North America, LLC and Mitsubishi Motors North America, Inc. have joined in a similar motion, filed in their respective cases, seeking a dismissal as well as monetary sanctions under Rule 11.  In both instances, the basis for dismissal lies with the disclaimer of patent scope during prosecution of the patent at issue.  Because the requests for relief differ, and there are slight differences in the facts among defendants that support the different relief sought, and to avoid needless confusion, two briefs have been submitted.  To be clear, for *all* defendants in the coordinated cases joining in either motion, dismissal pursuant to Rule 11 is warranted based on the clear and unambiguous disclaimer of patent scope that excludes all of the defendants' accused vehicles.

Scheduling Conference was held on August 6, 2013 with the Proposed Order being entered on August 27, 2013.  This proceeding is in the discovery stage.[2]

## III.    SUMMARY OF ARGUMENT

During prosecution of the '442 Patent, the inventor (Mr. Wai, prosecuting the patent application *pro se*) repeatedly and unambiguously stated that his invention does not use multi-function displays to convey information about certain operating conditions of the vehicle to the driver.  Instead, he unequivocally stated that his invention is limited to "dedicated displays" for showing those operating conditions.   VOT is well aware—and cannot dispute—that all of the Defendants' accused vehicles use multi-function displays, ***not*** dedicated displays as the inventor has characterized his invention, to provide representations of the specified vehicle information.  Because the inventor irrevocably disclaimed any patent scope that could have arguably included multi-function displays, there is absolutely no basis in law or fact for VOT's patent infringement claims—indeed, VOT's allegations cannot pass muster under the objective reasonableness standard.  The clear disavowal of patent scope for multi-function displays is not an issue that requires detailed claim construction or other factual development through discovery making this entire case ready for an immediate ruling on this Rule 11 motion for dismissal.

## IV.    LEGAL STANDARDS

### A.    Dismissal Under Rule 11 is Appropriate for Baseless and/or Frivolous Pleadings, Especially in the Third Circuit, Applying a Test of "Objective Reasonableness"

"Rule 11 is aimed at curbing baseless filings, which abuse the judicial system and burden courts and parties with needless expense and delay." *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997).  Rule 11(b) provides in pertinent part:

---

[2]The parties have exchanged Initial Disclosures, but additional discovery requests have not yet been served by any of the parties.

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> …
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; …

Additionally, the advisory committee notes state: "[Rule 11(b)] does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses."

In determining whether a pleading, motion or other paper fails to comport with the requirements of Rule 11, the regional-circuit law is applied.  *See Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002).  In the Third Circuit, there is a well-established test of "objective reasonableness," which discourages pleadings "without factual foundation, even though the paper was not filed in subjective bad faith."  *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 616 (3d Cir. 1991) (emphasis added; citation omitted).  Significantly, in the application of this Rule 11 "objective reasonableness test" in the Third Circuit, "[t]here is no room for a pure heart, empty head defense."  *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986).

In the Third Circuit, dismissal of cases founded on objectively baseless filings is appropriate.  *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) ("Other sanctions that could be appropriate … include … dismissal of baseless claims or defenses"); *Lease v. Fishel*, 712 F. Supp. 2d 359, 368 (M.D. Pa. 2010) ("The court can impose

… non-monetary sanctions, which can include: . . . dismissal of baseless claims").[3]  Dismissal is an appropriate sanction when lesser sanctions would be ineffective, such as when the entire case is frivolous.  *See Marina,* 202 F.3d at 325 (*citing Dodson v. Runyon,* 86 F.3d 37 (2d Cir. 1996)); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993).

### B.     Patent Scope Disclaimed Cannot Later Be Reclaimed

It is black letter law that statements made by an applicant during prosecution of a patent may result in disclaimer of patent scope.  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) ("The doctrine of prosecution disclaimer is well established in Supreme Court precedent, precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution."); *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000).

"Prosecution history disclaimer plays an important role in the patent system." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013).  As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution.  *Omega Eng'g*, 334 F.3d at 1324.

A patentee "is not entitled to any interpretation that it disclaimed during prosecution." *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010).  "A patentee may, through a clear and unmistakable disavowal in the prosecution history, surrender certain claim scope to which he would otherwise have an exclusive right by virtue of the claim

[3]Courts in other districts have reached a similar conclusion.  *See Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir. 1979) ("A district court has the power to dismiss a complaint if it is frivolous or brought for some ulterior purpose") (citing *Brown v. Dist. Unemployment Compensation Bd.*, 411 F. Supp. 1001, 1001-02 (D.D.C. 1975)); *Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000) ("Dismissal is a legitimate sanction under Rule 11") (citations omitted).

language." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009) (*citing Purdue Pharma LP. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006)); *see also Omega Eng'g*, 334 F.3d at 1326. "[A] disavowal, if clear and unambiguous, can lie in a single distinction among many." *Computer Docking Station v. Dell, Inc.*, 519 F.3d 1366, 1377 (Fed. Cir. 2008) (*citing Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007); *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1362 (Fed. Cir. 2005)).

It is of no moment if the applicant disclaimed, or surrendered more than was necessary. *See uShip Intellectual Props., LLC v. United States*, 714 F.3d 1311, 1315 (Fed. Cir. 2013) ("[t]he analysis focuses on what the applicant said, not on whether the representation was necessary or persuasive"); *Insituform Techs., Inc., v. Cat Contracting, Inc*., 99 F.3d 1098, 1107–08 (Fed. Cir. 1996). Further, "arguments made during prosecution regarding the meaning of a claim term are relevant to the interpretation of that term in every claim of the patent absent a clear indication to the contrary." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995). Additionally, "the presumption created by the doctrine of claim differentiation is 'not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history.' " *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1375 (Fed. Cir. 2008) (*quoting Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005)).

## V.   STATEMENT OF FACTS

### A.   The Inventor Limited the Alleged Invention to "Dedicated Displays"

Yu Hei Sunny Wai ("Mr. Wai") is the only named inventor listed on the '442 Patent. Mr. Wai also prosecuted the patent application that matured into the '442 Patent on his own behalf. Statements made by Mr. Wai during prosecution of his application necessarily reflect what he understood his invention to encompass.

5

In a July 25, 2005 Office Action, the examiner rejected numerous pending claims as anticipated by prior art references including Hauler, *et al.* (U.S. Patent No. 6,721,634) ("the Hauler Patent") and also identified other prior art references including Jaberi, *et al.* (U.S. Patent No. 5,880,710) ("the Jaberi Patent"); Haubner, *et al.* (U.S. Patent No. 4,594,572) ("the Haubner Patent"); and Beckert, *et al.* (U.S. Patent No. 5,949,345) ("the Beckert Patent"), as being "pertinent" to Mr. Wai's application.  Ex. B, pp. 6–9.

In a response dated November 9, 2005, Mr. Wai made multiple, clear and unambiguous statements characterizing what he identified as "the present invention."  Throughout these statements, Mr. Wai described the display present in his invention as being a "dedicated display" in contrast to multi-function displays.  Examples of Mr. Wai's substantive disclaimers are replete throughout the specification and prosecution history:

- With respect to the Beckert Patent, Mr. Wai distinguished the reference from his alleged invention by telling the PTO that "[t]he system disclosed [in the Beckert Patent] utilizes a standard computer oriented selection method for access to the display information. *It [the Beckert reference] is not a dedicated system which always presents specific types of information at all times as is done with the present invention.*"  Ex. C, '442 Patent Prosecution History, Nov. 14, 2005 Amendment, p. 14 (emphasis added).  In the '442 Patent specification, Mr. Wai contrasted the claimed invention, which uses dedicated displays, with the Beckert Patent, which uses a multi-function display (not a dedicated display), stating that "Berkert, [*sic*] et al., discloses a system based upon a computer program without the utilization of a dedicated display."  '442 Patent, at 2:21-23.

- With respect to the Hauler Patent, Mr. Wai emphasized the point as to dedicated displays, by declaring that "[Hauler's] displays *are not dedicated displays as with the present invention*. … The disclosed 'freely programmable instrument cluster' *is intended to provide the driver with a variety of options* for the review of operational parameters. *The [Hauler] patent thus does not disclose or teach the present invention.*"  Ex. C, p. 12 (emphasis added).

- Concerning the Jaberi Patent, Mr. Wai emphasized that "[t]he device and method disclosed [in Jaberi] *are not dedicated display means* and utilize a filtering process whose logic determines what is to be presented. *This is remote from and does not teach the present invention.*"  Ex. C, p. 13 (emphasis added).

6

- As to the Haubner Patent, Mr. Wai made clear that "[t]he disclosure [in Haubner] *is of a complex display means having multiple presentations* and is primarily concerned with the manner of processing the information. … Further, the presentations are lumped into a series of 6 blocks and *are not independent dedicated displays*." Ex. C, p. 14 (emphasis added). Mr. Wai again distinguishes his alleged invention, which requires "dedicated displays," from prior art systems, which used multi-function displays (or "complex display means having multiple presentations").

Additionally, the figures from the '442 Patent also reinforce Mr. Wai's repeated statements, depicting dedicated displays that require that torque, power consumption, and/or other vehicle operating parameters are displayed at all times, as shown below:



**B.     The Accused Vehicles All Use Multi-Function Displays**

(i)     Porsche's Accused Vehicles

VOT has accused the Porsche "911 4/4S all-wheel-drive models and other [Porsche] vehicles equipped with the Porsche Traction Management system" of infringing unspecified claims of the '442 Patent. *Vehicle Operation Techs., LLC v. Porsche Cars N. Am., Inc.*, C.A. No. 13-542-SLR, D.I. 1, ¶ 9.

The accused Porsche vehicles use a multi-function display as part of its instrument cluster to display specific information as configured by the user. Porsche's use of multi-function displays in the accused vehicles was publicly available in owner's manuals and on the internet. *See, e.g.,* http://www.porscheownersmanuals.com/2012-911-carrera-owners-manual/6/97/Multifunction-display-Menu-overview. Below is a representative picture of the multi-function display in the Porsche 911 Carrera as part of the instrument cluster:



The multi-function display in the Porsche vehicles is able to display a wide variety of information as configured by the driver.



Counsel for VOT is well-aware of the multi-function display present in Porsche's vehicles. VOT is a subsidiary of Empire IP, LLC. Similarly, Vehicle Interface Technologies, LLC ("VIT") is a subsidiary of Empire IP. As did VOT in the instant matters, VIT asserted allegations of patent infringement against a number of automobile manufacturers, including Porsche, in this district. *See Vehicle Interface Techs., LLC v. Porsche Cars N. Am., Inc.*, C.A.

No. 12-1286-RGA, D.I. 1.  In both the VOT and VIT matters against Porsche, the same counsel[4]

is present.  In the VIT complaint against Porsche, counsel for VIT (and VOT) described the

multi-function display of the Porsche vehicle as

> a computing system and a display that includes a fixed area to display vehicle
> information, e.g., speed, gas level, etc., and a selectable area to display a plurality
> of pages, each of which include at least one parameter for at least one of the
> vehicle's optional subsystems and wherein the fixed and selectable areas each
> comprise a unique and static portion of the display.  The computing system
> communicates with the display and operates the plurality of optional subsystems
> based on at least one parameter.  In addition, the infringing products and services
> include one or more input devices in communication with the computing system
> and located on the vehicle's steering device and/or the secondary display.  The
> infringing products and services include, for example, Defendant's Panamera with
> ***multi-function display*** and/or multi-function steering wheel, and various versions
> thereof.

*Id.*, ¶ 7 (emphasis added).  However, in answering numerous allegations propounded by Porsche

in its counterclaims regarding the multi-function display of the Porsche vehicles, VOT denied or

stated that it lacked information or belief sufficient to enable it to admit or deny the allegations.

*See Vehicle Operation Techs., LLC v. Porsche Cars N. Am., Inc.*, C.A. No. 13-542-SLR, D.I. 13,

¶¶ 17-28.

> (ii)     GM's Accused Vehicles

VOT has accused GM's Chevy Volt of infringing unspecified claims of the '442 Patent.

(13-540(SLR), D.I. 1 at ¶ 9.)  The accused Chevy Volt uses multi-function displays to display

specific information configured by the user.  A test drive of the Chevy Volt[5] or review of the

---

[4]Different local counsel represent VIT and VOT, but at least two of the same attorneys from Russ, August
& Kabat appear on the pleadings in both the VOT and VIT matters against Porsche.

[5]The Chevy Volt is available for a free test drive at any one of over 3,000 Chevrolet dealers in the United
States, including a dealership within five miles of VOT's lead counsel's Los Angeles office.

publicly accessible Chevy Volt owner's manual[6] indisputably demonstrates that the Chevy Volt only includes multi-function displays.

The Chevy Volt includes an instrument cluster (C) and a center stack display (F), as shown on page 1-2 of the 2012 owner's manual, which is reproduced below:



The instrument cluster has different display configurations selectable by the driver. The driver can configure the display to show different views and information by selecting the "simple" or "enhanced" configuration, depending on whether the vehicle is in "electric" or "extended range mode", as shown below and on page 5-14 of the user's manual:



---

[6]The owner's manual is viewable and downloadable at no cost at http://www.chevrolet.com.

Information available through the center stack display is also selectively displayed based on user configurations.  Examples are shown in chapter 5 of the owner's manual:



The center stack display is not a dedicated display because the display includes different screens configurable for display by the user.

Based on VOT's recent answer to GM's counterclaims, it appears that VOT failed to conduct any pre-filing investigation into the functionality of the Chevy Volt's displays, and such failure has continued throughout the case.  GM's answer, dated August 2, 2013, includes a counterclaim for non-infringement based on the Chevy Volt lacking any dedicated displays.  In the answer, GM alleges that "[t]he accused displays of the Chevy Volt are multifunctional and user-selectable through menus." (13-540(SLR) D.I. 14, ¶ 163.)  In its reply, dated August 27, 2013, VOT incredulously states that it "presently lacks knowledge or information to form a belief as to the truth" of this allegation. (13-540(SLR) D.I. 20, ¶ 163.)  If VOT had conducted a reasonable pre-filing (or post-filing) investigation through readily available, public information regarding the accused vehicles, VOT would only have been able to draw one reasonable conclusion, *i.e.*, the allegation is true.[7]  Because VOT did not admit this allegation, it is clear that VOT did not satisfy its Rule 11 obligations.

---

[7]VOT also answered that it "presently lacks knowledge or information sufficient to form a belief as to the truth" regarding other allegations regarding the operation of the Chevy Volt.  Amazingly, VOT could not form a belief as to whether the Chevy Volt "is not a four-wheel drive vehicle," "does not display an image indicating the approach of a rollover conditions," and "does not display the steering angle of the front wheels." (13-540(SLR) D.I. 14, ¶ 166, 174 and 182.)  If VOT performed a cursory examination of the Chevy Volt, it would have had to admit Volt is these allegations because it is readily apparent that Chevy not a four-wheel drive vehicle and doesn't include a rollover condition display or front wheel steering angle display.

(iii)     Ford's Accused Vehicles

VOT has accused the "Ford Focus Electric, Ford CMax Hybrid, Ford Fusion Hybrid, [Lincoln] MKZ Hybrid, Ford Escape Hybrid, and all of [Ford's] vehicles equipped with Ford's All Wheel Drive" of infringing unspecified claims of the '442 Patent.  The accused Ford vehicles use multi-function displays to display specific information as configured by the user.  Ford's use of multi-function displays in the accused vehicles was publicly available in owner's manuals, on the internet, or via a free test drive of Ford vehicles at one of the well over 3,000 Ford dealerships in the U.S.[8]  Below is a representative diagram of the multi-function display in the 2013 Ford Focus Electric as shown on page 20 of the owner's manual (noting the "Message Center" and "Infotainment" displays):



Cluster shown in standard measure – metric clusters similar.

A. Message center: See *Message Center* for more information.
B. Speedometer
C. Infotainment display: See *MyTouch* for more information.

The multi-function displays in the Ford vehicles are able to display a wide variety of views as configured and selected by the user.  For example, in the 2013 Ford Focus Electric, a variety of

_____

[8]*See*, *e.g.*, 2013 Ford Focus Electric Owner's Guide, at 20 (available at: http://www.motorcraftservice.com/pubs/content/~WODFEV/~MUS~LEN/41/13fevom1e.pdf); *see also* https://owner.ford.com/servlet/ContentServer?pagename=Owner/Page/OwnerVideoPage&year=2013&make=Ford&model=Focus%20Electric.  Multiple Ford dealerships are located within two miles of VOT's lead counsel's Los Angeles office.

mode and view options are available to the user to display, such as trip histories, energy history, and range views, as shown on pages 22-23 of the owner's manual:



Like with Porsche above, counsel for VOT is also well aware of the multi-function displays and the plurality of viewable pages available for selection by the user in Ford's vehicles through the patent infringement lawsuit filed by the Empire IP subsidiary, Vehicle Interface Technologies, LLC, against Ford, in this district.  *See Vehicle Interface Techs., LLC v. Ford Motor Co.*, C.A. No. 12-01284-RGA, D.I. 1.  In both the VOT and VIT matters against Ford, the same counsel is present for VOT and VIT is present.[9]   In the VIT complaint against Ford, counsel for VIT (and VOT) expressly described the multi-function displays of Ford vehicles as using a "selectable area to display a plurality of pages" when it alleged that Ford vehicles included:

---

[9]As with VIT's suit against Porsche, *supra* note 5, different local counsel represent VIT and VOT, but at least two of the same attorneys from Russ, August & Kabat appear on the pleadings in both the VOT and VIT matters against Ford.

> a computing system and a display that includes a fixed area to display vehicle information, e.g., speed, gas level, etc., and a **selectable area to display a plurality of pages**, each of which include at least one parameter for at least one of the vehicle's optional subsystems and wherein the fixed and selectable areas each comprise a unique and static portion of the display.

*VIT v. Ford*, D.I. 1 at ¶ 7 (emphasis added).

### C.    VOT Has Refused to Withdraw Its Patent Infringement Claims

Defendants have warned VOT's counsel about the implications of VOT's baseless allegations on multiple occasions.   In its counterclaim for a declaratory judgment of noninfringement, Porsche set forth detailed allegations of prosecution disclaimer.  VOT provided non-substantive, boilerplate responses and declined Porsche's invitation to amend its answer.[10][11]  Defendants again put VOT on notice of the frivolity of its baseless claims when negotiating the proposed scheduling order, advising that an early determination was needed to address the inventor's clear disavowal of multi-function displays from the asserted claim scope.[12]  Next, at

---

[10]The day after receiving VOT's answer, Porsche wrote to VOT and identified case law in support of Porsche's position why VOT's responses were deficient and asked that VOT amend its answer with substantive, unequivocal responses.  Ex. D, Letter from J. Dejmek to M. Fenster (June 28, 2013); *see also Chi. Dist. Council of Carpenters Pension Fund v. Balmoral Racing Club*, No. 00 C 2375, 2000 WL 876921, at *1 (N.D. Ill. June 26, 2000) (rejecting responses that "the documents speak for themselves" and noting that such responses do not fall within one of the three alternatives permitted by Rule 8(b)).  VOT did not respond.

[11]As set forth in the motion seeking dismissal and sanctions submitted in the related cases by other defendants, soon after answering VOT's Complaint, BMW sent examples of disclaimers made by the inventor during prosecution of the '442 Patent application excluded BMW's products from the scope of the asserted claims and again on August 5, 2013, detailing the bases for BMW's imminent Rule 11 motion, if VOT failed to withdraw its unsupportable allegations.  VOT did not substantively respond to either letter.

[12]Defendants once again clearly explained: "Defendants believe that this case can be resolved in its entirety through early resolution of a single, targeted question of law regarding the inventor's unambiguous disclaimer of claim scope during prosecution of the sole patent-in-suit.  Each and every independent claim of the patent requires a 'display' and the inventor, in distinguishing the prior art, repeatedly and unmistakably limited the 'display' of 'the present invention' to a 'dedicated display' that does not allow the driver to select the operational parameters of the vehicle to be displayed from among various options.  Defendants, however, utilize variable displays that allow the driver to select among various options and presently believe that resolution of this single, narrow issue of law would be

the August 6, 2013 scheduling conference, Defendants warned VOT's counsel of the risks of asserting its baseless claims, reiterating to VOT that certain Defendants planned to move under Rule 11 if VOT failed to withdraw its unfounded claims.  Finally, and as required by Rule 11, on September 4, 2013, Defendants served VOT with a copy of this motion by FedEx, advising that, unless VOT voluntarily dismissed its allegations within 21 days, Defendants would file this motion for dismissal.

VOT ignored each of the warnings, failing to respond in any way, including the 21-day "safe harbor notice," other than to acknowledge receipt.  Defendants sincerely hoped that VOT would withdraw its baseless cases without Court intervention, but VOT's counsel has steadfastly refused to address the issue (or withdraw this case), again demonstrating that VOT is not now, and has never been, "objectively reasonable" in pursuing the cases against Defendants, forcing the Defendants to file and pursue a Rule 11 dismissal.

## VI.   ARGUMENT

### A.   The Inventor Disclaimed Multi-Function Displays During Prosecution

Discovery is not needed to determine if there has been a disclaimer of patent scope.  The actual construction of the "display" limitations need not be determined at this time.  It is sufficient to note what the inventor stated repeatedly during prosecution of the '442 Patent— what is *not* part of "the present invention"—that the use of a multi-function display to present the status of specific real time operating conditions of a vehicle is not within the scope of the present invention.  *See Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988) ("by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims

---

dispositive as to all defendants in the case."  *Vehicle Operation Techs., LLC v. Porsche Cars N. Am., Inc.*, C.A. No. 13-542-SLR, D.I. 15, at 6.

do not cover"). Instead, the inventor clearly stated that the display of his invention is a "dedicated display."

Examples of a typical dedicated display in a vehicle may include a speedometer, tachometer, or a fuel gauge.

  

Such displays always present the specific information (i.e., speed, RPM, or fuel level) at all times. The real-time operating conditions that are displayed at all times claimed in the '442 Patent are: driving force (Claim 1); engagement force (Claims 7 and 41); torque and/or braking force (Claims 10 and 21); the approach of a rollover condition (Claims 16 and 29); or the power consumption of a vehicle component (Claim 36).

During prosecution of the '442 Patent, Mr. Wai distinguished a number of prior art references telling the PTO examiner (and the public) why his alleged invention was different than these references; that is, what his present invention did not incorporate. Based on Mr. Wai's clear and unambiguous statements, the "display" claimed in the '442 Patent

   (1) cannot use a "standard computer oriented selection method for access to the display information" (as in the Beckert Patent);

   (2) cannot consist of multiple presentations "lumped into a series of blocks [which] are not independent dedicated displays" (as in the Haubner Patent);

   (3) cannot require a selective process by either a processing means and/or by the driver wherein the logic of a filtering process is used to determine what is presented to the driver (as in the Jaberi Patent); and

(4) cannot be a "freely programmable instrument cluster" whose various displays are selectable by the driver and "provide the driver with a variety of options for the review of operational parameters."

In contrast to these features / capabilities, Mr. Wai limited the "display" of the present invention to a "dedicated display" which "always presents specific types of information at all times."  Mr. Wai's explicit disclaimers, as supported by the intrinsic evidence, "evince a clear and unmistakable surrender" of multi-function displays.

**B.     By Application of the Objective Reasonableness Test, VOT Failed to Conduct an Adequate Pre-Suit Investigation, Which Violates Rule 11**

Rule 11 required VOT's counsel to conduct "a reasonable pre-suit investigation" and "perform an objective evaluation of the [patent] claim terms when reading those terms on the accused device."  *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1328-29 (Fed. Cir. 2011) (upholding an award of Rule 11 sanctions where infringement theory contradicted patent specification, which "expose[d] the frivolity of [plaintiff's] claim construction position").  Thus, a violation of Rule 11 occurs when an objectively reasonable attorney would not believe, based on actual evidence uncovered during the pre-suit investigation, that each claim limitation actually reads on any accused device, either literally or under the doctrine of equivalents.  *See Antonious*, 275 F.3d at 1074.

Here, VOT did not conduct an adequate pre-suit investigation.  VOT could ***not*** have objectively believed, based on the intrinsic evidence (from the prosecution history of the patent) uncovered during a reasonable pre-suit investigation, that each claim limitation actually reads on the any of the accused vehicles.  A cursory reading of the prosecution history of the '442 Patent reveals the frivolity of VOT's infringement allegations, as the Defendants' accused vehicles incorporate features expressly disclaimed by the inventor, absolutely precluding infringement.

Indeed, each and every claim of the '442 Patent requires a specific display.[13]  In the record of the prosecution of the patent application that became the '442 Patent, upon which the public has a right to rely, Mr. Wai unequivocally limited the specific displays in the patent to "dedicated displays," by distinguishing the dedicated displays disclosed in the '442 Patent from the multi-function displays in the prior art.  These disclaimers, made in both the specification and prosecution history preclude any of Defendants' accused products from infringing.

For VOT's counsel to have a tenable case of infringement against any Defendant that is not objectively baseless, and thus to avoid violating Rule 11, there must be an accused product with a display *dedicated* to apprise the driver of the claimed operating condition[14] of the vehicle *at all times*.  Yet, none of the accused products by any of the Defendants contain dedicated displays, an indisputable fact that any reasonable pre-suit investigation would have uncovered.

Defendants' publicly-available vehicles and owner's manuals demonstrate that all of the accused products include multi-function displays that display a variety of different content and messages at different times, precisely what the inventor said cannot comprise his invention.  The use of multi-function displays in Defendants' vehicles clearly precludes them from infringing the required "dedicated displays."

Therefore, as these examples from the accused products clearly show, Defendants' multi-function displays, like the prior art that Mr. Wai explicitly disclaimed, and in contrast to the dedicated displays required by the '442 Patent, provide the driver with a variety of options for

---

[13]Every independent claim contains a "display" limitation—i.e., a "display means" (Claim 1); a "display device" (Claims 7, 10, 16, 21, 29 and 41) or a "display" (Claim 36).  In its answer to GM's counterclaim, VOT admits that all claims of the '442 Patent recite a "display." (13-540(SLR) D.I. 20, ¶ 162.)

[14]The real-time operating conditions that are displayed at all times claimed in the '442 Patent are: driving force (Claim 1); engagement force (Claims 7 and 41); torque and/or braking force (Claims 10 and 21); the approach of a rollover condition (Claims 16 and 29); or the power consumption of a vehicle component (Claim 36).

the review of operational parameters.  Additionally, in direct contrast to the dedicated displays

that Mr. Wai described, the Defendants' multi-function displays do not always provide the driver

with information about real time operating conditions of the vehicle, rather the displayed

information is selectable by the driver (and therefore not always presented).  In short, none of the

Defendants' accused products can possibly infringe any claim of the '442 Patent, at least because

all of the accused products indisputably lack the display (i.e., a "dedicated display") as set forth

by the inventor.  No objectively reasonable attorney could have fairly concluded otherwise.[15]

### C.    Dismissal With Prejudice is Appropriate Under Rule 11

Because VOT failed to conduct an adequate pre-suit investigation, evidenced by its

asserting patent claims against products with multi-function displays, when those very same

features were disclaimed during patent prosecution, the Complaints against Defendants are at

least "frivolous, legally unreasonable, or without factual foundation" and, thus, a violation of

Rule 11.  Additionally, VOT's continued pursuit of its claims that lack legal and factual support

runs afoul of Rule 11.  *See Phonometrics, Inc. v. Economy Inns of Am.*, 349 F.3d 1356, 1365-66

---

[15]VOT's case is unmeritorious against GM even if the claims of the '442 patent were not limited to "dedicated displays."  Many claims are clearly not infringed on other grounds, *e.g.*, claims 1-9 and 41-44 requiring a proper vehicle (*i.e.*, a four-wheel drive vehicle), and claims 16-20 and 29-36, requiring display of rollover condition approach.  The Chevy Volt indisputably does not include any of these features.  The other claims (claims 10-16 and 21-28 requiring display of torque and/or braking force and claims 36-40 requiring display of power consumption of a vehicle component) are clearly invalid.  The inventor filed his application in October, 2003.  By that time, vehicles displays provided a myriad of vehicle information to the user.  As shown in the uncited prior art references U.S. Patent Nos. 5,379,636 (the "Colarelli patent," Exhibit E) and 6,732,827 (the "San Miguel patent," Exhibit F) patent, the display of torque and braking force was well-known.  Likewise, display of vehicle component power consumption was also well-known, as shown in the uncited prior art reference U.S. Pat. No. 6,925,368 (the "Obayashi patent," Exhibit G).  GM has informed VOT of these defenses through a Rule 11 letter and introduced counterclaims for non-infringement and invalidity on these grounds in its answer.  In its answer to the counterclaims, VOT repeatedly refuses to admit or deny whether the references teach even the most elementary elements of these claims.  VOT hides behind claim construction and expert discovery.  However, if VOT analyzed the references in any detail, it is clear that the references invalidate these claims, under any reasonable claim construction position and any reasonable expert testimony.  VOT's actions reinforce the frivolous nature of this lawsuit.

(Fed. Cir. 2003) (upholding the district court determination that "[Plaintiff's] refusal to dismiss its claims … was simply an egregious violation of Rule 11").  Dismissal is an appropriate sanction, where, as here, the entire case is frivolous and lesser sanctions would be ineffective. *See Marina*, 202 F.3d at 325.  *See also Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810-11 (Fed. Cir. 1990) (finding Rule 11 violation "[w]here … the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court"); *see generally Tech. Innovations, LLC v. Amazon.com, Inc.*, No. 11-cv-690-SLR, D.I. 110 (Order) (D. Del. August, 15, 2013) (Robinson, J.).

In this Circuit, either dismissal or monetary sanctions have been deemed appropriate for violations under Rule 11.  *See Doering*, 857 F.2d at 194 (3d Cir. 1988) ("Other sanctions that could be appropriate in some circumstances, and that may take the place of a monetary award, include . . . dismissal of baseless claims or defenses"); *Lease*, 712 F. Supp at 368 ("The court can impose monetary sanctions such as attorney fees or penalties, or non-monetary sanctions, which can include: . . . dismissal of baseless claims"); *see also* Ex. A at 16:3-6 ("Rule 11 … carries with it sanctions besides just dismissal," Robinson, J.).  Due to the disregard of the Rule 11 requirements of a pre-suit investigation under Rule 11, as clearly displayed by VOT by filing seven lawsuits against automobile manufacturers with multi-function displays, when the patent claims are limited to dedicated displays, dismissal with prejudice is the appropriate remedy.

## VII.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that each of VOT's actions against the Defendants be dismissed with prejudice and such other and further relief as this Court may deem just and proper.

OF COUNSEL:

Eric A. Buresh
Jason R. Mudd
Ajay A. Sharma
ERISE IP, P.A.
3201 College Blvd.
Suite 300
Overland Park, KS 66211
(913) 777-5600
eric.buresh@eriseip.com
jason.mudd@eriseip.com
ajay.sharma@eriseip.com

Date: September 30, 2013

/s/ Benjamin J. Schladweiler
Collins J. Seitz, Jr. (#2237)
Benjamin J. Schladweiler (#4601)
SEITZ ROSS ARONSTAM & MORITZ LLP
100 S. West
Suite 400
Wilmington, DE  19801
(302) 576-1600
cseitz@seitzross.com
bschladweiler@seitzross.com

*Attorneys for Defendant*
*Ford Motor Company*



OF COUNSEL:

Mark A. Cantor
Matthew M. Jakubowski
Brian C. Doughty
BROOKS KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, MI 48075
 (248) 358-4400
mcantor@brookskushman.com
mjakubowski@brookskushman.com
bdoughty@brookskushman.com

Date: September 30, 2013

/s/ Richard L. Horwitz
Richard L. Horwitz. (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant*
*General Motors LLC*

OF COUNSEL:

Russell E. Levine, P.C.
James W. Dejmek
G. William Foster
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
(312) 862-2000
russell.levine@kirkland.com
james.dejmek@kirkland.com
billy.foster@kirkland.com


Date: September 30, 2013

 /s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com

*Attorneys for Defendant and Counterclaimant
Porsche Cars North America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2013, I caused to be filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification to counsel of record, and have caused copies of the foregoing to be served on the counsel listed below in the manner indicated:

**VIA ELECTRONIC MAIL**
Richard D. Kirk
Stephen B. Brauerman
Vanessa R. Tiradentes
Bayard, P.A.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com